1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PABLO RAMOS,                          ) Case No. EDCV 12-0872-JPR
                                      )
                Plaintiff,            )
                                      )
          vs.                         ) MEMORANDUM OPINION AND ORDER
                                      ) AFFIRMING THE COMMISSIONER
                                      )
CAROLYN W. COLVIN,                    )
Acting Commissioner of                )
Social Security,[1]                   )
                                      )
                Defendant.            )
                                      )

**I.   PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision

denying his application for Social Security disability insurance

benefits ("DIB").  The parties consented to the jurisdiction of

the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C.

§ 636(c).  This matter is before the Court on the parties' Joint

Stipulation, filed March 22, 2013, which the Court has taken

under submission without oral argument.  For the reasons stated

_____

     [1]    On February 14, 2013, Colvin became the Acting
Commissioner of Social Security.  Pursuant to Federal Rule of
Civil Procedure 25(d), the Court therefore substitutes Colvin for
Michael J. Astrue as the proper Respondent.

1

below, the Commissioner's decision is affirmed and this action is dismissed.

**II.   BACKGROUND**

Plaintiff was born on September 13, 1962.  (Administrative Record ("AR") 137.)  He obtained a sixth-grade education in Mexico, and he understands some English but cannot speak, read, or write in English.  (AR 57-58.)  Plaintiff previously worked as an assembler of camper shells.  (AR 151-52, 157-58.)

On June 11, 2009, Plaintiff filed an application for DIB. (AR 137-42.)  He alleged that he had been unable to work since December 22, 2006, because of pain in his lower back and right arm that stemmed from injuries in a work-related accident in June 2006.  (AR 58-62, 146-51, 250.)  His application was denied initially, on September 10, 2009 (AR 83-87), and upon reconsideration, on January 14, 2010 (AR 88-92).

After Plaintiff's application was denied, he requested a hearing before an Administrative Law Judge ("ALJ").  (AR 94-100.) A hearing was held on November 1, 2010, at which Plaintiff, who was represented by counsel, appeared and testified through a Spanish-language interpreter; a vocational expert ("VE") also testified.  (AR 47-78.)  In a written decision issued January 7, 2011, the ALJ determined that Plaintiff was not disabled.  (AR 27-46.)  On February 6, 2012, the Appeals Council incorporated additional evidence into the record but denied Plaintiff's request for review.  (AR 10-15, 563-67.)  This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings

and decision should be upheld if they are free of legal error and
supported by substantial evidence based on the record as a whole.
Id.; Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420,
1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746
(9th Cir. 2007).  Substantial evidence means such evidence as a
reasonable person might accept as adequate to support a
conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue,
504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla
but less than a preponderance.  Lingenfelter, 504 F.3d at 1035
(citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.
2006)).  To determine whether substantial evidence supports a
finding, the reviewing court "must review the administrative
record as a whole, weighing both the evidence that supports and
the evidence that detracts from the Commissioner's conclusion."
Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the
evidence can reasonably support either affirming or reversing,"
the reviewing court "may not substitute its judgment" for that of
the Commissioner.  Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

    People are "disabled" for purposes of receiving Social
Security benefits if they are unable to engage in any substantial
gainful activity owing to a physical or mental impairment that is
expected to result in death or which has lasted, or is expected
to last, for a continuous period of at least 12 months.  42
U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257
(9th Cir. 1992).

    A.   The Five-Step Evaluation Process

    The ALJ follows a five-step sequential evaluation process in

3

assessing whether a claimant is disabled.  20 C.F.R.
§ 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th
Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the
Commissioner must determine whether the claimant is currently
engaged in substantial gainful activity; if so, the claimant is
not disabled and the claim must be denied.  § 404.1520(a)(4)(i).
If the claimant is not engaged in substantial gainful activity,
the second step requires the Commissioner to determine whether
the claimant has a "severe" impairment or combination of
impairments significantly limiting his ability to do basic work
activities; if not, a finding of not disabled is made and the
claim must be denied.  § 404.1520(a)(4)(ii).  If the claimant has
a "severe" impairment or combination of impairments, the third
step requires the Commissioner to determine whether the
impairment or combination of impairments meets or equals an
impairment in the Listing of Impairments ("Listing") set forth at
20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is
conclusively presumed and benefits are awarded.
§ 404.1520(a)(4)(iii).  If the claimant's impairment or
combination of impairments does not meet or equal an impairment
in the Listing, the fourth step requires the Commissioner to
determine whether the claimant has sufficient residual functional
capacity ("RFC")[2] to perform his past work; if so, the claimant
is not disabled and the claim must be denied.
§ 404.1520(a)(4)(iv).  The claimant has the burden of proving

_____

[2]    RFC is what a claimant can do despite existing
exertional and nonexertional limitations.  20 C.F.R. § 404.1545;
see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1    that he is unable to perform past relevant work.  <u>Drouin</u>, 966

2    F.2d at 1257.  If the claimant meets that burden, a prima facie

3    case of disability is established.  <u>Id.</u>  If that happens or if

4    the claimant has no past relevant work, the Commissioner then

5    bears the burden of establishing that the claimant is not

6    disabled because he can perform other substantial gainful work

7    available in the national economy.  § 404.1520(a)(4)(v).  That

8    determination comprises the fifth and final step in the

9    sequential analysis.  § 404.1520; <u>Lester</u>, 81 F.3d at 828 n.5;

10   <u>Drouin</u>, 966 F.2d at 1257.

11          B.    <u>The ALJ's Application of the Five-Step Process</u>

12         At step one, the ALJ found that Plaintiff had not engaged in

13   any substantial gainful activity since December 22, 2006.  (AR

14   32.)  At step two, the ALJ concluded that Plaintiff had the

15   severe impairments of "degenerative disc disease of the neck and

16   back, right shoulder impairment, and obesity."  (<u>Id.</u>)  At step

17   three, the ALJ determined that Plaintiff's impairments did not

18   meet or equal any of the impairments in the Listing.  (AR 33.)

19   At step four, the ALJ found that Plaintiff retained the RFC to

20   perform light work[3] as follows:

21

22

23         [3]    "Light work" involves "lifting no more than 20 pounds
     at a time with frequent lifting or carrying of objects weighing
24   up to 10 pounds."  20 C.F.R. § 404.1567(b).  The regulations
     further specify that "[e]ven though the weight lifted may be very
25   little, a job is in this category when it requires a good deal of
     walking or standing, or when it involves sitting most of the time
26   with some pushing and pulling of arm or leg controls."  <u>Id.</u>  A
     person capable of light work is also capable of "sedentary work,"
27   which involves lifting "no more than 10 pounds at a time and
     occasionally lifting or carrying [small articles]" and may
28   involve occasional walking or standing. § 404.1567(a)-(b).

the claimant can lift and/or carry 20 pounds occasionally
and 10 pounds frequently; he can stand and/or walk for
six hours out of an eight-hour workday with regular
breaks; he can sit for six hours out of an eight-hour
workday with regular breaks; he is limited to occasional
postural activities; he cannot work above shoulder level
on his right; he must avoid concentrated exposure to
extreme cold, vibrations, and hazards.

(Id.)  Based on the VE's testimony, the ALJ concluded that
Plaintiff was unable to perform any past relevant work.  (AR 41.)
At step five, the ALJ concluded that Plaintiff was not disabled
under the framework of the Medical-Vocational Guidelines, 20
C.F.R. Part 404, Subpart P, Appendix 2, and that jobs existed in
significant numbers in the national economy that Plaintiff could
perform.  (Id.)  Based on the VE's testimony, the ALJ found that
Plaintiff could perform such jobs as production assembler (DOT
706.687-010, 1991 WL 679074), cook helper (DOT 317.687-010, 1991
WL 672752), and cleaner/housekeeper (DOT 323.687-014, 1991 WL
672783).  (Id.)  Accordingly, the ALJ determined that Plaintiff
was not disabled.  (Id.)

**V. RELEVANT FACTS**

On June 19, 2006, Plaintiff was injured in a work-related
accident.  (AR 205, 250.)  He continued to work, however, until
December 2006, when he was laid off.  (AR 54, 250.)  In January
2007 Plaintiff attempted to work as a laborer but stopped after a
short time because of pain in his back and right arm.  (AR 55,
157.)  After he was laid off, Plaintiff filed a workers'
compensation action in connection with his workplace injury.  (AR

54, 135, 192-93, 195-98, 489.)  As the ALJ noted (AR 35), almost all of the medical evidence in the record stems from Plaintiff's evaluation and treatment in connection with his workers' compensation case.

On April 10, 2008, Plaintiff had MRIs performed of the lumbar and cervical spine.  (AR 272-74, 278-80.)  The lumbar-spine MRI showed "[d]iffuse mild spondylosis," congenital stenosis of the thecal sac, and posterior disc bulges of one to two millimeters at the L3-L4 level and five to six millimeters at the L5-S1 level "without evidence of neural foraminal narrowing" or of spondylolysis, spondylolisthesis, or signal abnormality. (AR 272-73.)  The cervical spine MRI showed "[d]iffuse spondylosis," a one- to two-millimeter posterior disc bulge at the C2-C7 level with uncovertebral osteophyte formation at C3-4 and C4-5 without evidence of canal stenosis or neural foraminal narrowing, and nonspecific straightening of the normal cervical lordosis, possibly as a result of muscle strain, but no evidence of spondylolysis, spondylolisthesis, or signal abnormality.  (AR 278-80.)  On the same day, Plaintiff also underwent an MRI of his right shoulder, which revealed a full focal thickness tear of the supraspinatus tendon at its insertion, acromioclavicular osteoarthritis, and bicipital tenosynovitis.  (AR 275-77.)

On April 21, 2008, a lower-extremity electromyography suggested an active bilateral L5-S1 lumbar radiculopathy, the right greater than the left.  (AR 283.)  On the same day, a nerve conduction study showed reduced amplitude in the left lateral plantar motor, left medial plantar motor, right medial plantar motor, and right peroneal motor.  (AR 285-92.)  The peroneal

1  motor nerve also showed abnormal left-right amplitude
2  differences, and the tibial H-reflex showed abnormal left-right
3  latency differences.  (Id.)

4      Between May 2008 and September 2010, Plaintiff visited
5  chiropractor Bryan Aun, who was Plaintiff's "primary treating
6  physician" for purposes of his workers' compensation case.  (See
7  AR 225.)  Aun periodically examined Plaintiff, evaluated his work
8  status, and referred Plaintiff to various doctors for
9  consultation.  (AR 225, 233-62, 464-560, 563-68.)

10     On June 4, 2008, Plaintiff visited orthopedist Kamran
11  Aflatoon.  (AR 294.)  Dr. Aflatoon noted Plaintiff's complaints
12  of "moderate" discomfort in his lower back and "very limited
13  range of motion in the right shoulder."  (Id.)  Plaintiff stated
14  that he was unable to do "overhead activities" but denied any
15  pain or symptoms in other areas of the body.  (AR 294-95.)  Dr.
16  Aflatoon noted that Plaintiff was in "no acute distress," had a
17  "[n]ormal gait with no evidence of antalgia," had "[n]o evidence
18  of foot drop," was "[a]ble to walk on tip toes and heels with
19  some radiation of pain," and was "[a]ble to squat down without
20  difficulty."  (AR 296.)  His range of motion in the lumbar spine
21  was slightly below normal, he had tenderness and pain in some
22  areas, and there was "loss of the normal lumbar lordosis," but
23  "no visible deformity[] or step-off" existed and he had "no
24  palpable abnormalities."  (AR 297.)  His range of motion in the
25  right shoulder was below normal, but his range of motion in the
26  left shoulder and in both elbows, wrists, and hands was normal.
27  (AR 298.)  Plaintiff's mental status was noted as normal.  (AR
28  299.)  Dr. Aflatoon diagnosed Plaintiff with a tear in his right

rotator cuff and lumbar radiculopathy; he recommended arthroscopic surgery for Plaintiff's shoulder.  (Id.)

On September 22, 2008, Plaintiff visited Dr. Suchandra Turner as part of his workers' compensation case.  (AR 549.)  Dr. Turner noted that Plaintiff's musculoskeletal examination was unchanged and that Plaintiff should continue on his current medications.  (AR 549-50.)

On October 7, 2008, Plaintiff underwent an electromyography and nerve conduction study, which showed carpal tunnel syndrome, moderate on the right and severe on the left.  (AR 545-47.) There was no evidence of cervical radiculopathy or any other peripheral nerve compression.  (Id.)

On December 17, 2008, Plaintiff had x-rays taken of his cervical spine, hip, and pelvis, none of which showed any abnormalities.  (AR 256-57.)  An x-ray of his lumbar spine showed small degenerative anterior marginal spurs at the L4 and L5 level but no disc narrowing or signs of spondylolysis or spondylolisthesis.  (AR 256.)

On February 23, 2009, Aun referred Plaintiff to workers' compensation Agreed Medical Examiner Dr. David Kim for evaluation.  (AR 234-62.)  Dr. Kim reviewed Plaintiff's medical records and noted Plaintiff's complaints of neck pain, right-shoulder pain, and low-back pain.  (AR 234-52.)  Plaintiff reported difficulty lifting, carrying, bending, twisting, pushing, pulling, reaching, kneeling, squatting, crawling, stair climbing, and walking and standing for "too long."  (AR 253.)  He also reported symptoms of depression and anxiety.  (Id.)  Dr. Kim's examination of Plaintiff's cervical spine and lumbar spine

showed normal results except for some tenderness to palpation. (AR 253-55.)  Plaintiff's right shoulder had tenderness to palpation but was otherwise normal.  (AR 254.)  Plaintiff was able to walk normally and climbed onto the examination table without difficulty.  (AR 256.)  He showed no signs of muscle weakness, and his straight-leg raising was positive on the right but negative on the left.  (Id.)  X-rays of the lumbar spine showed only mild abnormalities.  (AR 286-57.)  Dr. Kim diagnosed Plaintiff with chronic cervical sprain or strain, right-shoulder strain, and lumbosacral sprain or strain.  (AR 257.)  Dr. Kim concluded that Plaintiff "in the future is precluded from heavy work activities" and could not return to his former job.  (AR 260-61.)

Between March 2009 and September 2010, Aun referred Plaintiff to Dr. Grant Williams for pain management in connection with his workers' compensation case.  (AR 217-23, 338-463.) During each examination, Dr. Williams reported Plaintiff's subjective complaints and then performed a physical examination. (See id.)  Dr. Williams diagnosed Plaintiff with a host of disorders, including displacement of cervical intervertebral discs without myelopathy at the C2-3 and C6-7 levels; brachial neuritis or radiculitis not otherwise specified; displacement of the lumbar intervertebral disc without myelopathy at the L3-4, L4-5, and L5-S1 levels; lumbosacral neuritis or radiculitis unspecified; rotator-cuff sprain and right-rotator-cuff tear; headache; abnormal weight gain; sexual dysfunction; dysthymic disorder/depression; insomnia; lumbosacral facet joint syndrome; cervical facet joint hypertrophy; and TMJ syndrome.  (See AR 343,

1  358, 368, 378, 395, 407, 417, 421-22, 430, 444, 452-53, 460.)
2  Dr. Williams prescribed steroid injections and radiofrequency
3  rhizotomy of the lumbar facet joints.  (Id.)

4       On September 29, 2009, Dr. Williams filled out a Physical
5  Capacities Evaluation form, in which he noted that Plaintiff
6  could sit for only two hours and stand for only one hour in an
7  eight-hour workday, could not walk at all, and needed to be in a
8  horizontal position for the majority of the day.  (AR 361.)  He
9  stated that Plaintiff could never lift or carry more than five
10 pounds and could not grasp, push, pull, perform fine
11 manipulation, or do repetitive movements at all on either the
12 right or the left.  (Id.)  He also stated that Plaintiff could
13 never bend, squat, crawl, climb, or reach, and he was completely
14 restricted from unprotected heights, being around moving
15 machinery, exposure to changes in temperature and humidity,
16 driving automotive equipment, and exposure to pulmonary
17 irritants.  (Id.)  He described Plaintiff's symptoms as "back
18 pain, neck pain, right shoulder pain, headaches, [and] insomnia"
19 and noted that test results and clinical findings showed
20 herniated discs in the cervical and lumbar spine and a right-
21 rotator-cuff tear.  (AR 362.)

22      On September 5, 2009, state-agency physician Dr. R. Bitonte
23 reviewed the evidence of record and concluded that Plaintiff
24 could perform a range of light work with occasional postural
25 activities and limited reaching, but he must avoid concentrated
26 exposure to extreme cold, vibration, and hazards.  (AR 227-29.)
27 On January 13, 2010, state-agency reviewing physician Dr. S. Lee
28 reviewed the record and concurred with Dr. Bitonte that Plaintiff

11

could perform light work.  (AR 263-64.)

On October 29, 2009, Aun referred Plaintiff to Dr. Sanjay Deshmukh for a consultation.  (AR 469.)  Dr. Deshmukh noted slightly lower grip strength in Plaintiff's right hand, slightly reduced abduction, flexion, and external rotation in his right shoulder, and reduced motion in the lumbar spine, but otherwise Plaintiff's examination results were grossly normal.  (AR 472-77.)

On September 7, 2010, Dr. Williams evaluated Plaintiff after Plaintiff had received a series of three lumbar epidural steroid injections and undergone a successful percutaneous epidural decompression neuroplasty of the lumbosacral nerve roots with lumbar facet blocks.  (AR 338-45, 395-99, 421-25.)  Dr. Williams noted that Plaintiff had increased range of motion, restored ability to function in his lower back, and a 75 percent reduction in pain.  (AR 340.)

On August 11, 2010, Aun reported that Plaintiff had a "chronic" condition preventing him from working and that he was not able to work.  (AR 479.)  Nonetheless, on September 29 and 30, 2010, Aun reported that Plaintiff could return to "modified work" as of August 11, 2010, with the restrictions that he perform "[n]o very heavy work," "[n]o very repetitive overhead work," and "[n]o repetitive bending or stooping."  (AR 465-66.)

On February 24, 2011, after the ALJ issued his unfavorable decision, Aun filled out a Physical Residual Functional Capacity Questionnaire, on which he stated that Plaintiff could not sit or stand for more than 15 minutes; needed to walk for two minutes every 15 minutes, change positions at will, and take unscheduled

12

breaks two or three times a week; could occasionally lift up to 20 pounds; did not have any significant limitations in doing repetitive reaching, handling, or fingering; could bend and twist 25 percent of the time; and would need to be absent from work more than three times a month. (AR 564-67.) He concluded by stating that Plaintiff was limited to "no very heavy work." (AR 567.)

Chiropractor Aun also facilitated Plaintiff's mental-health evaluations as part of his workers' compensation case. On November 13, 2008, Aun referred Plaintiff to psychiatrist Dr. David Dye for a Psychological Consultation for Pain Management.[4] (AR 320.) Dr. Dye noted that Plaintiff complained of frustration, anxiety, and depression as a result of his "chronic" pain. (AR 322.) He noted that Plaintiff's appearance and behavior were appropriate and he responded well to questions. (AR 323.) Plaintiff appeared to be in "moderate" psychological distress, but his attention, concentration, memory, fund of information, abstracting ability, language skills, and cognitive processes were unimpaired, and his insight and judgment were "fair." (Id.) Dr. Dye performed a series of psychological tests, which showed moderate impairment. (AR 324-26.) Dr. Dye assessed Plaintiff's prognosis as "good" and noted that he had only "slight" to "moderate" impairments in work functions. (AR 327-28.) Dr. Dye assigned Plaintiff a Global Assessment of

---

[4]    In his written decision, the ALJ incorrectly stated that Plaintiff's November 13, 2008 visit was with Dr. Bal Grewal, a colleague of Dr. Dye's who examined Plaintiff in November 2009. (AR 37, 301-02, 320.)

Functioning ("GAF")[5] score of 43.  (AR 327, 329.)

On November 5, 2009, Aun referred Plaintiff to psychiatrist Dr. Bal Grewal for a Psychological Permanent and Stationary Evaluation in connection with his workers' compensation case. (AR 301-02.)  Dr. Grewal noted that Plaintiff complained of "intense and constant" pain in his neck and right side and "emotional upset, including frustration, anxiety, and depression in reaction to chronic pain and limitations." (AR 303.)  Dr. Grewal noted that Plaintiff's appearance and behavior were appropriate, he had no difficulty answering questions, and he was polite and responsive.  (AR 304.)  Plaintiff's "level of responsiveness did not show obvious effects of pain, medications, or drugs," and his "level of psychological distress appeared to be mild." (Id.)  Plaintiff exhibited "slight" worry and uneasiness and "some" feelings of sadness.  (Id.)  He complained of "moderate" depression.  (Id.)  His attention and concentration were noted as "significantly impaired," his immediate memory showed "some deficits," and his intellectual ability was "low average," but there was no evidence of cognitive deficits, his fund of information was consistent with his background and intelligence level, his judgment was adequate, and his psychological functioning and adjustment appeared "fair." (Id.)

---

[5]    A GAF score represents a rating of overall psychological functioning on a scale of 0 to 100.  See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Disorders [hereinafter DSM-IV], Text Revision 34 (4th ed. 2000).  A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id.

Dr. Grewal performed a series of psychological tests, the results of which showed mild to moderate impairment.  (AR 306-10.)  Dr. Grewal assigned a GAF score of 63, indicating "mild-moderate symptomotology."[6]  (AR 312, 316.)  Plaintiff was assessed as having "no impairment" to "moderate impairment" in activities of daily living; social functioning; concentration, persistence, and pace; and adaptation and decompensation in work or worklike settings.  (AR 315-16.)   Dr. Grewal noted that Plaintiff's psychiatric symptoms had responded well to treatment.[7]  (AR 317-18.)  He concluded that Plaintiff was "permanent and stationary"[8] and was "not able to work in his usual and customary occupation" because of "[c]hronic pain, functional limitations, depression, anxiety, and physical difficulties."  (AR 318.)

**VI.  DISCUSSION**

Plaintiff alleges that the ALJ erred in the following ways: (1) evaluating Plaintiff's credibility; (2) determining Plaintiff's RFC; (3) evaluating the medical evidence of record;

---

[6]   A GAF score between 60 and 70 indicates "some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV at Text Revision 34.

[7]   As the ALJ noted, however (AR 37), the record contains no evidence that Plaintiff ever was prescribed or received any psychiatric treatment, not even medications for depression. Indeed, in his own report Dr. Grewal noted that Plaintiff acknowledged that the only even quasi-psychiatric treatment he received related to pain management.  (AR 311.)

[8]   "Permanent and stationary" means that Plaintiff's "medical condition [had] reached the maximum medical improvement and [was] unlikely to change."  Hernandez v. Colvin, No. CV 12-3320-SP, 2013 WL 1245978, at *9 n.8 (C.D. Cal. Mar. 25, 2013) (citing 8 Cal. Code Regs. § 10152).

and (4) formulating the hypothetical to the VE and relying on the VE's testimony to conclude that a significant number of jobs existed in the economy that Plaintiff could perform. (J. Stip. at 3.) None of these contentions warrant reversal.[9]

A. <u>The ALJ Properly Evaluated the Medical Evidence</u>

Plaintiff claims that the ALJ erred in (1) rejecting Dr. Williams's and Aun's opinions and (2) failing to consider all of his physical and mental impairments, either individually or in combination. (J. Stip. at 23-31, 36-37.) These contentions do not warrant reversal.

1. <u>The ALJ did not err in considering Aun's and Dr. Williams's opinions</u>

Plaintiff contends that the ALJ erred in failing to properly consider Aun's and Dr. Williams's opinions. To the extent the ALJ rejected those opinions, he provided specific and legitimate reasons for doing so that were supported by substantial evidence. Accordingly, he did not err.

a. *Applicable law*

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the Plaintiff, (2) those who examined but did not treat the Plaintiff, and (3) those who did not directly treat or examine the Plaintiff. <u>Lester</u>, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more

_____

[9]     The Court has rearranged the order in which it addresses Plaintiff's claims from that followed by the parties, to avoid repetition and for other reasons.

16

weight than that of a nonexamining physician.  <u>Id.</u>  When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  <u>Carmickle v. Comm'r Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting <u>Lester</u>, 81 F.3d at 830-31).  When a treating physician's opinion conflicts with another doctor's, however, the ALJ must provide only "specific and legitimate reasons" for discounting the treating physician's opinion.  <u>Id.</u>  A treating physician is a claimaint's own physician who has provided or continues to provide him with medical treatment or evaluation in an ongoing treatment relationship.  <u>See</u> <u>Benton ex rel. Benton v. Barnhart</u>, 331 F.3d 1030, 1035 (9th Cir. 2003); § 404.1502.

In determining disability, the ALJ "must develop the record and interpret the medical evidence" but need not discuss "every piece of evidence in the record."  <u>Howard</u>, 341 F.3d at 1012.  The ALJ is responsible for resolving conflicts in the medical evidence.  <u>Carmickle</u>, 533 F.3d at 1164.

An ALJ may not disregard a physician's medical opinion simply because it was initially procured in the context of a state workers' compensation claim or framed in the terminology of such proceedings.  <u>Booth v. Barnhart</u>, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002).  "The ALJ must 'translate' terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination."  <u>Id.</u> at 1106.

b.  *Discussion*

The ALJ gave "little weight" to Aun's August 11, 2010 opinion[10] that Plaintiff was unable to return to work because (1) it was inconsistent with his September 29, 2010 opinion that Plaintiff could return to work as of August 11, 2010, with some limitations; (2) it was not supported by objective evidence; (3) it conflicted with Plaintiff's daily activities; and (4) Aun was a chiropractor and thus did not qualify as an acceptable medical source.  (AR 38.)  He also gave "little weight" to Dr. Williams's September 2009 RFC assessment and his "multiple diagnoses" of additional impairments because they were based on Plaintiff's discredited subjective complaints, not supported by objective evidence, and inconsistent with Plaintiff's daily activities and other evidence in the record.  (AR 36, 38.)  The ALJ's analysis was proper.

Initially, the ALJ correctly gave "little weight" to Aun's conclusion that Plaintiff could not work in part because Aun was not an acceptable medical source.  See (AR 38); § 404.1513(a) & (d); Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (opinions from "other sources" given less weight than "acceptable medical sources"); Bunnell v. Sullivan, 912 F.3d 1149, 1152 (9th Cir. 1990) ("Although a claimant is free to offer chiropractic evidence to help the Secretary understand his inability to work, . . . there is no requirement that the Secretary accept or

_____

[10]    The ALJ stated that Aun opined Plaintiff could not work on October 10, 2010.  (AR 38.)  In fact, the opinion the ALJ referenced appears to be dated August 11, 2010, though it notes that Plaintiff was due for a follow-up appointment on October 10.  (See AR 478.)

specifically refute such evidence."), <u>superseded on other grounds</u>
<u>by</u> 947 F.2d 341 (9th Cir. 1991) (en banc); <u>Kottke v. Astrue</u>, No.
CV 07-05618-VBK, 2008 U.S. Dist. LEXIS 73329, at *13 (C.D. Cal.
Aug. 1, 2008) (holding that "ALJ was not bound to accept a
residual functional capacity assessment rendered by a
chiropractor based on his own diagnosis" because "[t]o do so
would blur the line between the type of evidence which may be
considered from acceptable medical sources, as against evidence
from other sources").

The ALJ also properly rejected Aun's and Dr. Williams's
opinions to the extent they were not supported by their own
clinical findings and conflicted with the other evidence of
record.  <u>See</u> § 404.1527(d)(4) (explaining that more weight should
be afforded to medical opinions that are consistent with the
record as a whole).  As the ALJ correctly noted, in September
2009, Aun found that Plaintiff was capable of working with
certain restrictions that essentially corresponded to the ALJ's
restriction to light work.  (AR 38, 465-66.)  His previous
opinions that Plaintiff could not work, rendered close in time to
the September 2009 opinion, appeared to be based on a finding
that Plaintiff should remain off work in order to undergo
surgery; once surgery was off the table, it appears that Aun
found Plaintiff could go back to work as long as he was limited
to essentially light work.  (AR 38, 40, 465-66, 479.)  Moreover,
as the ALJ pointed out, nearly all the objective evidence in the
record, including the reports of Drs. Kim, Aflatoon, Turner,
Deshmukh, Bitonte, and Lee, supported the ALJ's conclusion that
Plaintiff had impairments in his back and shoulder but was not

19

completely precluded from working.  (AR 39-40, 227-29, 234-62, 263-64, 294-99, 469-77, 549-50.)  Even Dr. Williams noted that Plaintiff's symptoms improved significantly after he underwent epidural injections.  (AR 340.)  The ALJ therefore properly concluded that Dr. Williams's highly restrictive RFC finding, rendered on a check-box form and unsupported by objective clinical findings, was entitled to little weight.  (AR 38); see Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004) (holding that treating physicians' conflicting, checklist-form opinions were entitled to minimal weight).  For the same reason, Aun's RFC finding, submitted to the Appeals Council after the ALJ's decision, does not mandate reversal.  (AR 563-67.)  Indeed, it is at least somewhat consistent with the ALJ's RFC finding, as Aun apparently concluded that Plaintiff was limited only to "no very heavy work."  (AR 567.)

The ALJ also properly rejected Dr. Williams's diagnoses of additional impairments such as cephalgia, cervical radiculitis, brachial neuritis, sexual dysfunction, insomnia, and TMJ syndrome because they were not supported by any evidence in the record.  (AR 36.)[11]  As the ALJ noted, the record showed that Plaintiff received no treatment for any of those diagnoses even though he had medical insurance and received regular treatment for his other impairments.  (AR 36; see AR 60 (Plaintiff discussing his medical coverage).)  No other doctor to examine Plaintiff

---

[11]     Dr. Williams opined that as a result of all of Plaintiff's alleged impairments, he was "totally restricted" from driving a car.  (AR 361.)  He apparently was not aware that by Plaintiff's own testimony, he spent almost all day driving four of his five children to and from school.  (AR 67-69.)

1   diagnosed any of those impairments.  (See AR 234-62, 294-99, 469-
2   77, 549-50.)  Indeed, Dr. Williams's and Aun's RFC findings for
3   Plaintiff were inconsistent with each other: Dr. Williams said
4   that Plaintiff could occasionally lift only up to five pounds and
5   could never use either of his hands for "simple grasping,"
6   pushing, pulling, or fine manipulation (AR 361), whereas Aun said
7   that Plaintiff could occasionally lift up to 20 pounds and had no
8   limitations in doing repetitive reaching, handling, or fingering
9   or in grasping, turning, or twisting objects, performing fine
10  manipulations, or overhead reaching on either side (AR 566).
11  Moreover, Dr. Williams was not a mental-health specialist, and
12  thus the ALJ properly gave his additional diagnosis of depression
13  little weight.  (AR 36); see § 404.1527(d)(5); Holohan v.
14  Massanari, 246 F.3d 1195, 1203 n.2 (9th Cir. 2001) (physician's
15  opinion may be "entitled to little if any weight" if physician
16  "offers an opinion on a matter not related to her . . . area of
17  specialization").

18      Further, the ALJ properly rejected Aun's and Dr. Williams's
19  opinions to the extent they were based on Plaintiff's discredited
20  subjective complaints.  As discussed more fully in Section VI.C
21  below, the ALJ's rejection of Plaintiff's subjective testimony
22  was proper.  As the ALJ pointed out, Dr. Williams "seemed to
23  accept uncritically as true most, if not all, of what the
24  claimant reported."  (AR 36; see generally AR 338-459.)  To the
25  extent Aun and Dr. Williams relied on Plaintiff's discredited
26  subjective complaints, the ALJ was entitled to disregard their
27  opinions.  See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.
28  1995) ("[A]n opinion of disability premised to a large extent

upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted.").

The ALJ was also entitled to adopt the opinions of reviewing physicians Bitonte and Lee over those of Aun and Williams.  (AR 39); see Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("[O]pinions of non-treating or non-examining physicians may . . . serve as substantial evidence when . . . consistent with independent clinical findings or other evidence in the record.").  As the ALJ found, their opinions were consistent with Dr. Deshmukh's examination showing essentially normal results and Dr. Kim's findings that Plaintiff had sprains or strains in his right shoulder and spine but was otherwise unimpaired and could do less than heavy work.  (AR 37, 39-40.)  As noted, Dr. Williams's and Aun's findings were largely inconsistent with each other.  In any event, any conflict in the properly supported medical-opinion evidence was the "sole province of the ALJ to resolve."  Andrews, 53 F.3d at 1041.  Indeed, the ALJ gave Plaintiff the benefit of the doubt in concluding that he was capable of light work rather than adopting Dr. Kim's finding that he could perform less than heavy work.  (See AR 40.)

The ALJ also was entitled to reject Aun's and Dr. Williams's opinions on Plaintiff's ability to return to work to the extent they were conclusions about Plaintiff's disability for workers' compensation purposes.  See Coria v. Heckler, 750 F.2d 245, 247-48 (3d Cir. 1984) (explaining that because of differences in the definition of "disability" in the state workers' compensation and Social Security contexts, "the ALJ could reasonably disregard so

much of the physicians' reports as set forth their conclusions as
to [plaintiff's] disability for workers' compensation purposes,"
but objective medical evidence in reports elicited for workers'
compensation should be evaluated by same standards as medical
evidence in Social Security reports).  Moreover, the ALJ was
entitled to disregard Aun's and Dr. Williams's opinions to the
extent they were opinions on Plaintiff's ultimate disability
status, which the ALJ was not obligated to accept.  <u>See</u>
§ 404.1527(d)(1) ("A statement by a medical source that you are
'disabled' or 'unable to work' does not mean that we will
determine that you are disabled."); SSR 96-5p, 1996 WL 374183, at
*5 (explaining that treating-source opinions that a person is
disabled or unable to work "can never be entitled to controlling
weight or given special significance").  Reversal is not
warranted on this basis.

> ## 2.   <u>The ALJ did not err in his consideration of</u>
> <u>Plaintiff's other impairments</u>

Plaintiff contends that the ALJ erred at step two by failing
to consider as severe Plaintiff's depression and the additional
physical impairments diagnosed by Dr. Williams. (J. Stip. at 24-
28.)  Reversal is not warranted on this basis because substantial
evidence in the record supports the ALJ's step-two determination.

At step two of the sequential evaluation process, a
plaintiff has the burden to present evidence of medical signs,
symptoms, and laboratory findings that establish a severe
medically determinable physical or mental impairment that can be
expected to result in death or last for a continuous period of at
least 12 months.  <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1004-05 (9th

Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D));[12] see 20 C.F.R. §§ 404.1520, 404.1509.  Substantial evidence supports an ALJ's determination at step two that a claimant was not disabled when "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment."  Ukolov, 420 F.3d at 1004-05 (citing SSR 96-4p).  An impairment may never be found on the basis of the claimant's subjective symptoms alone.  Id. at 1005.

Step two is "a de minimis screening device [used] to dispose of groundless claims."  Smolen, 80 F.3d at 1290.  Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established the claimant did not have a medically severe impairment or combination of impairments.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").  An impairment or combination of impairments is "not severe" if the evidence established only a slight abnormality that had "no more than a minimal effect on an individual's ability to work."  Webb, 433 F.3d at 686 (citation omitted).

---

[12]    A "medical sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques."  Ukolov, 420 F.3d at 1005.

Plaintiff failed to meet his burden to present evidence of medical signs, symptoms, and laboratory findings establishing that his alleged depression constituted a medically determinable mental impairment. See § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."). The ALJ was entitled to reject the GAF score of 43 because it was inconsistent with the other evidence in the record – including a later GAF score of 63 – showing that Plaintiff's depression was not significantly limiting (AR 38, 40); in any event, GAF scores "[do] not have a direct correlation to the severity requirements in the Social Security Administration's mental disorders listings," and an ALJ may properly disregard a low GAF score if other substantial evidence supports a finding that the claimant was not disabled. See Doney v. Astrue, 485 F. App'x 163, 165 (9th Cir. 2012) (alterations and citations omitted). Other than the one low GAF score, Dr. Grewal's and Dr. Dye's evaluations generally supported the ALJ's determination that Plaintiff's depression was not severe. For example, Dr. Dye found that Plaintiff was alert and responded well to questioning, his cognitive processes were not impaired, he had a "good" prognosis and responded well to medications, and he had only "slight" to "moderate" impairment in his ability to perform work functions. (AR 323-28.) Dr. Grewal similarly found that Plaintiff's symptoms were "mild" to "moderate," he responded well to treatment for his pain, and he appeared to be in only "mild" distress. (AR 304, 315-18.) To the extent Dr. Grewal suggested that Plaintiff's depression limited his ability to work

(see AR 318), the ALJ properly rejected that portion of the
opinion because it relied heavily on Plaintiff's discredited
subjective complaints (AR 40).   See Andrews, 53 F.3d at 1043
("[A]n opinion of disability premised to a large extent upon the
claimant's own accounts of his symptoms and limitations may be
disregarded, once those complaints have themselves been properly
discounted.").   Moreover, Dr. Grewal's opinion evaluated only
Plaintiff's ability to return to his former job, which the ALJ
agreed he could not do.   (See AR 41, 318.)

        Apart from Dr. Grewal's and Dr. Dye's evaluations obtained
for the purposes of Plaintiff's workers' compensation case, the
record is devoid of any mental-health treatment notes or
functional limitations opined by any mental-health professional
resulting from Plaintiff's alleged depression.   To the extent Dr.
Williams also opined that Plaintiff's depression affected his
ability to work, the ALJ properly rejected that opinion because
Dr. Williams was not a mental-health professional and his opinion
was not supported by any medical findings.   (AR 36); see
§ 404.1527(d)(5); Holohan, 246 F.3d at 1203 n.2.   Even if
Plaintiff did suffer from depression, the ALJ was entitled to
infer that any symptoms were adequately controlled with
Plaintiff's pain medication.   See § 404.1529(c)(3)(iv) (ALJ may
consider effectiveness of medication in evaluating severity and
limiting effects of impairment); Warre v. Comm'r of Soc. Sec.
Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that
can be controlled effectively with medication are not disabling
for the purpose of determining eligibility for [Social Security]
benefits.").   Further, Plaintiff testified that the only

1  impairments affecting his ability to work were related to his
2  back and shoulder; he never mentioned any symptoms resulting from
3  depression or any other impairments.  (AR 54-70; see also AR
4  151.)  Accordingly, substantial evidence supports the ALJ's
5  determination that Plaintiff's depression did not constitute a
6  medically determinable impairment.  (AR 39); see Ukolov, 420 F.3d
7  at 1004-05.

8       Plaintiff also argues that the ALJ failed to address his
9  impairments of leg and foot pain, sexual dysfunction, headaches,
10  and insomnia as diagnosed by Dr. Williams, either individually or
11  in combination.  (J. Stip. at 24-27.)  Even assuming sufficient
12  evidence in the record showed that Plaintiff suffered from these
13  impairments, but see supra Section VI.A.1, these conditions did
14  not constitute severe impairments if they did not prevent
15  Plaintiff from working.  See § 404.1520(c) (severe impairment is
16  one that "significantly limits [claimant's] physical or mental
17  ability to do basic work activities").  Substantial evidence
18  supports the ALJ's finding that these impairments were not severe
19  because no doctor other than Dr. Williams diagnosed them, and
20  other than his taking medication for insomnia, which appeared to
21  control it (AR 219), there was no record of his receiving
22  treatment for any of the alleged impairments even though he had
23  insurance and received regular medical treatment for his other
24  impairments (AR 36, 60).  See Houghton v. Comm'r, Soc. Sec.
25  Admin., 493 F. App'x 843, 845-46 (9th Cir. 2012) (holding that
26  ALJ "was not required to discuss" plaintiff's alleged limitations
27  "arising from depression, a heart condition, sleep apnea, a right
28  heel injury, diabetes with neuropathy in the right leg, or

27

obesity" "in the absence of significant probative evidence that they had some functional impact on [plaintiff's] ability to work").

To the extent Plaintiff claims the ALJ should have discussed at step three the combined effect of his impairments (see J. Stip. at 28-29), the ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (citing Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)).  Here, Plaintiff and his counsel never asked the ALJ to consider any particular Listings, and Plaintiff has failed to point to any credited evidence of functional limitations that would have affected the ALJ's analysis, nor has he offered any plausible theory of how the combination of his impairments equaled a Listing.  The ALJ therefore did not commit reversible error by failing to make additional findings at step three.

B.   The ALJ Properly Assessed Plaintiff's RFC and Found that a Significant Number of Jobs Existed that Plaintiff Could Perform

Plaintiff argues that the ALJ did not properly evaluate his RFC.  (J. Stip. at 16-21, 22-23.)  Similarly, he argues that the ALJ erred in determining that Plaintiff could perform a significant number of jobs in the economy.  (J. Stip. at 37-39, 40.)  The essence of Plaintiff's arguments appears to be that in determining Plaintiff's RFC, the ALJ should have accounted for additional impairments, including depression and Dr. Williams's

28

various diagnoses, as well as Aun's and Dr. Williams's more
severe functional restrictions.  As discussed above in Section
VI.A, however, the ALJ properly rejected that evidence.  Thus,
his RFC finding, which accounted for all the impairments he
determined were properly supported by the medical evidence, was
proper.  See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir.
2001) ("Nor was the ALJ bound to accept as true the restrictions
set forth in the second hypothetical question if they were not
supported by substantial evidence.  An ALJ is free to accept or
reject restrictions in a hypothetical question that are not
supported by substantial evidence."); Rollins, 261 F.3d at 857
("[B]ecause the ALJ included all of the limitations that he found
to exist, and because his findings were supported by substantial
evidence, the ALJ did not err in omitting the other limitations
that Rollins had claimed, but had failed to prove.").  The VE
testified that an individual with Plaintiff's limited English
skills who was capable of light work but who could do "[n]o work
above the right shoulder" and "[s]hould avoid concentrated
exposure to extreme cold, vibration, and hazards" could not
perform Plaintiff's past work but could perform such jobs as
production assembler, cook helper, and housekeeping cleaner.  (AR
73-74.)  The ALJ was entitled to credit that testimony.  See
Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).

Because the ALJ's RFC assessment was supported by
substantial evidence and he properly relied on the VE's testimony
in finding that a significant number of jobs existed that
Plaintiff could perform, Plaintiff is not entitled to reversal on
these claims.

1          C.   <u>The ALJ Properly Assessed Plaintiff's Credibility</u>

2          Plaintiff argues that the ALJ failed to provide clear and

3    convincing reasons for discounting his credibility.  (J. Stip. at

4    3-11, 14-16.)  Because the ALJ did provide clear and convincing

5    reasons supporting his evaluation of Plaintiff's testimony and

6    those reasons were supported by substantial evidence in the

7    record, reversal is not warranted on this basis.

8          1.   <u>Applicable law</u>

9          An ALJ's assessment of pain severity and claimant

10   credibility is entitled to "great weight."  <u>See</u> <u>Weetman v.</u>

11   <u>Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779

12   F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to

13   believe every allegation of disabling pain, or else disability

14   benefits would be available for the asking, a result plainly

15   contrary to 42 U.S.C. § 423(d)(5)(A)."  <u>Molina v. Astrue</u>, 674

16   F.3d 1104, 1122 (9th Cir. 2012).  In evaluating a claimant's

17   subjective symptom testimony, the ALJ engages in a two-step

18   analysis.  <u>See</u> <u>Lingenfelter</u>, 504 F.3d at 1035-36.  "First, the

19   ALJ must determine whether the claimant has presented objective

20   medical evidence of an underlying impairment [that] could

21   reasonably be expected to produce the pain or other symptoms

22   alleged."  <u>Id.</u> at 1036 (internal quotation marks omitted).  If

23   such objective medical evidence exists, the ALJ may not reject a

24   claimant's testimony "simply because there is no showing that the

25   impairment can reasonably produce the *degree* of symptom alleged."

26   <u>Smolen</u>, 80 F.3d at 1282 (emphasis in original).  When the ALJ

27   finds a claimant's subjective complaints not credible, the ALJ

28   must make specific findings that support the conclusion.  <u>See</u>

1  <u>Berry v. Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010).   Absent

2  affirmative evidence of malingering, those findings must provide

3  "clear and convincing" reasons for rejecting the claimant's

4  testimony.   <u>Lester</u>, 81 F.3d at 834.   If the ALJ's credibility

5  finding is supported by substantial evidence in the record, the

6  reviewing court "may not engage in second-guessing."   <u>Thomas</u>, 278

7  F.3d at 959.

8          2.   <u>Background</u>

9          Plaintiff claimed in his Disability Report that his ability

10  to work was limited in the following ways: "No lifting over 10

11  lbs, loss of memory, no prolonged[] standing, sitting, walking,"

12  "[u]nable to look over right side," and "[n]umbness in right

13  hand." (AR 151.)  At the hearing, Plaintiff testified that he

14  stopped working on December 22, 2006, because his "company

15  closed." (AR 54.)  As to his impairments, he stated that he was

16  unable to sit or stand "for very long" and could not be "bent

17  over very, very much," "go up stairs," or "twist." (AR 58.)  He

18  stated that he could stand for about 10 minutes before needing to

19  sit down and could not sit through an entire TV show without

20  having to lie flat on his back and rest. (AR 58-59.)  He

21  testified that a problem with the discs in his middle to lower

22  back caused a pulsating pain in his back. (AR 61-62.)  He stated

23  that he occasionally used medication and creams for the pain,

24  which helped, but mostly he lied down to ease the pain. (AR 62-

25  63.)  He stated that he needed to rest for 10 to 15 minutes

26  "throughout the day" and had to wake up every 20 to 25 minutes at

27  night to change positions. (AR 63-64.)

28          As to his daily activities, Plaintiff testified that he
   lived with his wife and five children and was the only person in

31

the household who drove.  (AR 67-68.)  He drove his wife to go
grocery shopping and run errands and drove four of his five kids
to school and back; he essentially spent the entire day driving
his wife and kids back and forth.  (AR 67-69.)  He also attended
church on Sundays, cooked for himself, helped his children with
homework, and "sometimes" tried to do yard work, but it was
difficult because of his back pain.  (AR 68-69.)

>    3.   Discussion

The ALJ evaluated Plaintiff's credibility as follows:

> Despite his alleged impairments and difficulties, the
> claimant has engaged in a somewhat normal level of daily
> activity and interaction.   The claimant testified he
> lives with his wife and five minor children.  As the only
> driver in his household, the claimant testified that he
> drives his children to and from school and drives his
> wife grocery shopping.   The claimant admitted that he
> helps [with] household chores, cooks, helps his kids with
> their homework and attends church on Sundays.
>
> Some of the physical and mental abilities and social
> interactions required in order to perform these
> activities are the same as those necessary for obtaining
> and maintaining employment.  The claimant's ability to
> participate in such activities undermined the credibility
> of the claimant's allegations of disabling functional
> limitations.
>
> . . . .
>
> The claimant reports taking muscle relaxers, anti-
> inflammatory, pain medications and sleep aids [(AR 154,
> 184, 188)].   The claimant told his treating physician

1   that his prescribed medications have caused his stomach
2   to hurt.  However, on November 13, 2008 and November 5,
3   2009, the claimant told his workers' compensation
4   psychologist that his pain medications were working and
5   he reported no side effects.  The claimant's
6   inconsistency in reporting side effects to medications
7   reduces his credibility regarding these complaints.

8       The claimant's testimony and statements of record
9   are only credible to the extent the claimant can do the
10  work described herein.  The claimant's credibility
11  regarding the severity of his symptoms is diminished
12  because those allegations are greater than expected in
13  light of the objective evidence of record.

14  (AR 34-35.)

15      Reversal is not warranted based on the ALJ's alleged failure
16  to make proper credibility findings or properly consider
17  Plaintiff's subjective symptoms.  To the extent the ALJ rejected
18  Plaintiff's allegations, he provided clear and convincing reasons
19  for doing so.  As the ALJ noted, Plaintiff responded well to
20  treatment and did not appear to seek any additional treatment
21  outside that provided in connection with his workers'
22  compensation case even though he had insurance.  (AR 34-36); see
23  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (ALJ may rely on
24  "unexplained, or inadequately explained, failure to seek
25  treatment" in rejecting claimant's credibility); Tommasetti v.
26  Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer that
27  claimant's "response to conservative treatment undermines
28  [claimant's] reports regarding the disabling nature of his
    pain").  Plaintiff also made inconsistent statements about the

side effects caused by his medications, which was a proper basis
for the ALJ to reject his credibility.  (AR 34); see Burch, 400
F.3d at 680 (in determining credibility, ALJ "may engage in
ordinary techniques of credibility evaluation").  Moreover,
Plaintiff admitted at the hearing that he initially stopped
working because he was laid off, not because he was injured.  (AR
54); see Bruton v. Massanari, 268 F.3d 824, 826 (9th Cir. 2001)
(holding that ALJ properly considered fact that claimant stopped
working because he was laid off, not because of medical
disability).  Plaintiff's testimony also conflicted with the
medical evidence of record, which showed that Plaintiff's
impairments had only mild to moderate effects on his ability to
function.  (AR 34-36.)  Even though Plaintiff allegedly injured
himself in June 2006, the record contains no evidence of his
having visited any doctor until March 2007, after he was laid off
and then filed a workers' compensation claim.  (See AR 236, 250.)
The ALJ was entitled to discount Plaintiff's subjective testimony
to the extent it conflicted with the medical record.  See
Carmickle, 533 F.3d at 1161 ("Contradiction with the medical
record is a sufficient basis for rejecting the claimant's
subjective testimony."); Lingenfelter, 504 F.3d at 1040 (in
determining credibility, ALJ may consider "whether the alleged
symptoms are consistent with the medical evidence"); Burch, 400
F.3d at 681 ("Although lack of medical evidence cannot form the
sole basis for discounting pain testimony, it is a factor that
the ALJ can consider in his credibility analysis."); Kennelly v.
Astrue, 313 F. App'x 977, 979 (9th Cir. 2009) (same).

     Moreover, as the ALJ noted, Plaintiff admitted that he was
able to do a wide variety of daily activities, including

1  extensive driving, taking care of his five children, cooking,
2  doing household chores, and regularly attending church.  (AR 67-
3  69, 34-35.)   That Plaintiff's allegations of disabling pain were
4  inconsistent with his daily activities was a valid reason for the
5  ALJ to discount his testimony.  See Bray v. Comm'r of Soc. Sec.
6  Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (ALJ properly
7  discounted claimant's testimony because "she leads an active
8  lifestyle, including cleaning, cooking, walking her dogs, and
9  driving to appointments"); Molina, 674 F.3d at 1113 ("Even where
10 [claimant's] activities suggest some difficulty functioning, they
11 may be grounds for discrediting the claimant's testimony to the
12 extent that they contradict claims of a totally debilitating
13 impairment.").

14      To the extent the ALJ found Plaintiff's statements were not
15 credible because he received only conservative treatment for his
16 impairments, "limited to prescription pain medication, over the
17 counter medications, steroid injections, a home exercise program,
18 acupuncture, chiropractic visits, activity modification and
19 physical therapy" (AR 35), that reasoning might not have been
20 clear and convincing because epidural and steroid injections may
21 not be consistent with a finding of conservative treatment.  See
22 Tagle v. Astrue, No. CV-11-7093-SP, 2012 WL 4364242, at *4 (C.D.
23 Cal. Sept. 21, 2012) ("While physical therapy and pain medication
24 are conservative, epidural and trigger point injections are
25 not."); Christie v. Astrue, No. CV 10-3448-PJW, 2011 WL 4368189,
26 at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize
27 steroid, trigger-point, and epidural injections as conservative).
28 Despite that potential error, however, remand is not required
   because the remainder of the ALJ's credibility findings were

supported by substantial evidence in the record.  See Carmickle, 533 F.3d at 1162; Batson, 359 F.3d at 1190, 1197.  This Court may not "second-guess" the ALJ's credibility finding simply because the evidence may have been susceptible of other interpretations more favorable to Plaintiff.  See Tommasetti, 533 F.3d at 1039.  Reversal is therefore not warranted on this basis.

**VII. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[13] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 26, 2013

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[13]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."